The North Missouri Railroad Company *v.* B. F.
Akers.

*Error from Leavenworth County.*

"That a court had no jurisdiction of the person of defendant," is not a
ground for new trial; *doubted* if it ever was.

*It would appear* that there are cases where a foreign corporation may, on
principle, be sued in a state other than the one which created it, as
where the corporation sends its officers, on whom service of summons
may properly be made, into the state where suit is brought, to transact
official business. 13 Pet., 519.

The chapter on construction of statutes [Comp. L., 837], the 13th sub-
division of which provides that "the word 'person' may be extended to
bodies politic and corporate," *held* to apply to the civil code. Applying
such construction to section 59 thereof [Comp. L., 133], and it authorizes
actions to be brought against foreign corporations.

Where the subject matter of the action against a foreign corporation is
breach of contract, over which our courts have jurisdiction, and where
the corporation appears and submits its case to the decision of the court,
it is too late to raise the question of want of jurisdiction over the person
of defendant.

Where action was brought for breach of contract to transfer mules by the
defendant on its road, a part of the mules having escaped, a part of
which were recovered by plaintiff, by whom search was made for all, the
expenses of such search and recovery being alleged as part of the dam-
ages, *held* proper to inquire on the trial, of a properly qualified witness,
What the services in the search were worth? and how much was paid out
in recovering the part? These questions would call for competent evi-
dence of the measure of damages for the breach alleged.

*It would seem* proper to ascertain, first, what the actual expenses were, and
then ascertain whether they were reasonable.

Where the escape of the mules was made while agents of defendant below
were driving them, with others—250 in all—from the yards of defendant
below, at the termination of its road, to water, *held* competent to inquire,
How many hands would be necessary to drive 250 mules, under the cir-
cumstances detailed?—the witness having shown knowledge of the sub-

Statement of the case.

ject matter of the inquiry, it called for evidence bearing upon the degree of care exercised by defendant.

In such case, the evidence being conflicting as to whether the contract of defendant was to deliver the mules to the H. & St. J. R. R. Co. at M. city, or merely to ship them to M. city, the termination of defendant's road, it became a question involved, whether the defendant below acted in the capacity of common carriers until the delivery of the mules to the continuing road, or whether as warehousemen with the mules in its yard—this as to fix the proper measure of care. As carriers, defendant was bound to deliver as agreed, and the question of care was not involved. As warehousemen, the degree of care became material.

Held proper to make the distinction between the liability in the two capacities in the charge to the jury, it being a question of fact in which of the two capacities defendant acted.

Where one defense to such action was the statute of limitations, to which it was replied that "defendant was a foreign corporation, created and existing under the laws of Missouri, and having no corporate existence under the laws of Kansas," there having been testimony introduced absolutely proving these allegations, held not error in the court below to refuse to charge "that the defendant having set up the statute of limitations as a bar to the plaintiff's right to recover, and the plaintiff having failed to plead or prove an avoidance, the jury must find for the defendant," because the assumption of fact in the instruction is not sustained by the record, the defendant below being a "person" within the meaning of § 28, Civ. Code [Comp. L., 128], and out of the state.

The case Bonifant v. Doniphan [3 Kans., 35] referred to and approved.

The facts of the case are substantially as follows :

The defendant in error brought action against the plaintiff in, error, for a breach of an agreement between the parties, whereby plaintiff in error, common carrier, agreed to transport 250 mules of defendant in error, from St. Louis to Hudson, Missouri, practically identical with Macon city, and there safely to deliver the same to the Hannibal & St. Joseph railroad company. Consideration for, and delivery and acceptance of the mules under the contract, were duly alleged. Damages were claimed for the value of ten head lost,

and time and expenses of searching therefor by plain-tiff below, and expenses of recovering six other head.

Summons was served in the case on the president of the road, at Leavenworth, Kansas, personally.

An answer was filed by defendant below admitting delivery by plaintiff below to defendant, of the mules, but claimed that the defendant agreed to deliver the same only to Macon city, Missouri, and no further, that being the terminus of its road, which transfer it made, of which plaintiff was notified, and a delivery thereof made to plaintiff, who, thereafter, placed them in certain stock pens, and that the escape was through his own negligence.

As a third defense the two years statute of limita-tion was plead.

The reply to the third defense alleged that the de-fendant was a foreign corporation, existing under the laws of Missouri, and having no corporate existence under the laws of Kansas.

A trial was had before a jury. The testimony as to what was the contract was conflicting. It was abso-lute and uncontradicted that the defendant was a foreign corporation. The circumstances of the escape of the mules, and the search thereof, sufficiently ap-pear in the opinion of the court to present the points raised thereon. Questions were raised on the instruc-tions asked by defendant, and refused by the court, and upon those given by the court.

The defendant asked the court to instruct the jury as follows ; the 7th charge being omitted, it being fully set forth in the opinion :

1. If the jury believe from the evidence that the defendant shipped over its road a lot of mules for plaintiff, and that said mules were safely placed in the

pens of the company at the terminus of the road, at Macon city, Missouri, by them for the plaintiff, then said defendant is not liable as a common carrier, and was only liable to exercise an ordinary degree of care and attention about the mules while in its custody.

2. If the jury believe from the evidence that defendant contracted to carry the mules to the terminus of its road, at Macon city, and that it did so, and that the plaintiff, nor any one for him, was there to receive said mules, then said defendant became only liable in case of a loss of any of the mules, when the evidence shows gross neglect on the part of the defendant in taking care of said mules.

3. It was the duty of the plaintiff, or some one for him, to be present at Macon city to receive the mules when they arrived, and if he failed or neglected to be so present, then the defendant is not responsible for any loss that may have occurred, after waiting a reasonable time for plaintiff to take said mules away.

4. If the plaintiff, through his own carelessness or inattention, failed to take the said mules within a reasonable time from the defendant, then said defendant is not liable for any mules that may have been lost.

5. If the jury believe from the evidence that the mules stampeded, and that defendant's employees used all reasonable efforts to keep them from escaping, then defendant is not liable to plaintiff for the value of any mules that may have been lost.

6. Defendant was not bound to the same degree of care whilst in charge of live stock of known propensities to stampede and escape as if defendant had charge of goods or other inanimate property.

8. If the jury believe from the evidence that defend-

ant tendered the mules to the H. & St. Jo. R. R. Co. for carriage to Leavenworth, their destination, immediately after their arrival at Macon city, and said company refused to receive them, they must find for defendant, unless they believe that defendant lost the mules of plaintiff through gross negligence afterwards.

9. The duties and responsibilities of a carrier and a warehouseman are wholly different; the carrier being bound to deliver what he carries at all hazards, and the warehouseman being bound to use ordinary and reasonable care and diligence only, whilst the goods or stock are in his charge, in that capacity.

10. That two days is not a reasonable time to permit live stock to remain at the point of delivery without applying to the carrier to receive such live stock, and relieve him of the charge thereof.

11. The same weight is to be given to testimony taken in the form of depositions as to oral evidence.

Which instructions the court refused to give. The court, on its own motion, instructed the jury as follows:

A common carrier is one who is employed generally in carrying freight and passengers from one point to another for a reward. In this case, if you believe from the evidence that the defendant being employed, undertook to carry a lot of mules for plaintiff over its road, then the defendant is liable to plaintiff, as a common carrier, for any loss or damage plaintiff may have suffered if the defendant failed to safely carry and deliver at the point it undertook to carry the mules to, unless such damage was caused by the act of God or the public enemy; but when the defendant had carried plaintiff's mules as far as it had agreed, and

plaintiff was not present on the arrival of the mules at the point of destination and delivery, nor within a reasonable time after their arrival at that point, then the defendant, if it put the mules in the stock pen of the company, determined its liability as a common carrier, and was liable thereafter as a warehouseman, and warehousemen are liable for the failure to exercise ordinary care and diligence in regard to the mules, for any loss and damage that plaintiff may have suffered. (The court here explained what constituted ordinary care.) The defendant could only determine or change its liability as a common carrier, by placing the mules in the custody of some third person, or in its stock pens, on their arrival at the point of destination; and defendant should have made a tender of the mules to the H. & St. Jo. R. R. Co., if you believe from the evidence that it contracted to deliver them to the H. & St. Jo. R. R., at Macon. You are to determine, from all the evidence, in what capacity defendant acted, and the degree of care it exercised when the mules in question were in its possession, and what damage, if any, the plaintiff has sustained.

*Hemingray & Fitzwilliam*, for plaintiff in error.

*Pendry & Gambell*, for defendant in error.

*Hemingray & Fitzwilliam* made the following points:

1. The alleged cause of action did not accrue within two years, and is barred by the statute of limitations. *a.* By the statute (§§ 1, 2, 3, *Comp. L.*, 232), the right of action in this case is limited to two years "after

the cause or right of action shall have accrued, and
not after." § 2 is applicable to all cases, whether the
debtor be a natural person or corporation (*Kane* v.
*Bloodgood*, 7 *Johns. Ch. R.*, 129 ; *Wych* v. *East India
Co.*, 3 *P. Wms.*, 309 ; *South Sea Co.* v. *Wymondsell*,
3 *P. Wms.*, 142 ; 22 *N. Y.*, 44 ; 30 *Barb.*, 537); and it
applies to the subject matter (*Chick et al.* v. *Willits*,
2 *Kans.*, 390), and is within the state power, although
the party setting it up as a bar to the right to sue
became a citizen of this state upon the very day he
was sued. (*Bank of Alabama* v. *Dalton*, 9 *How.* [*U.
S.*], 522 ; *Bonifant* v. *Doniphan*, 3 *Kans.*, 35 ; §§ 32,
215, *U. S. Dig.*, *vol.* 18, 501 ; *Swickard* v. *Bailey*, 3
*Kans.*, 511 ; *Morton* v. *Sterling*, 15 *La. An.*, 399 ; 23
*U. S. Dig.*, 358, § 78 ; *McElmoyne* v. *Cohens*, 13 *Peters*,
312.) *b.* It is claimed that the case comes within the
exception created in § 28, civil code, 162. We submit
it is not, upon the reasoning of the court in Falkner *v.*
Del. & Rar. Canal Co., 1 Denio, 441 ; Bucklin *v.*
Ford, 5 Barb., 393 ; Olcot *v.* Tioga R. R. Co., 26 Barb.,
147. *c.* The 28th section does not apply to foreign corpo-
rations, but to natural persons only, and has application
to a debtor within the state, or to a debtor who is capable
of migrating, and of a cause of action originating
within the state. *d.* The term "person," as a general
rule, when used in statutes, is confined to natural per-
sons, and corporations are not included, unless made
so by the provisions of the act. (*McQueen* v. *Middle-
town Manf. Co.*, 16 *John.*, 5 ; *Bank of Ithica* v. *King*,
12 *Wend.*, 390 ; *Blair* v. *Worly*, 1 *Scam.*, 178 ; *School
Directors* v. *Carlisle Bank*, 8 *Wats.*, 291; *Betts* v.
*Menard*, 1 *Brees.*) *e.* Corporations have no capacity
to migrate, and can have no legal existence beyond the
territorial limits of the sovereign by which they are

created. (*Bank of Augusta* v. *Earl*, 13 *Pet.*, 519 ; *Runyan* v. *Lessees of Costar*, 14 *id.*, 129 ; *McQueen* v. *Middletown Manf. Co.*, 16 *John.*, 5 ; *Bank of Virginia* v. *Adams*, 1 *Parsons's Select Eq. Cas.*, 548 ; *Ohio & Miss. R. R. Co.* v. *Wheeler*, 1 *Black.*, 286.) *f.* And this is the more apparent, when we consider that a foreign corporation cannot be sued without the jurisdiction of the sovereignty where this artificial body exists, except upon foreign attachment *in rem*, under local statutes, for the suit would abate should the defendant plead that it was a foreign corporation, and that the cause of action arose without this state. (16 *John.*, 5, *supra* ; *Peckham* v. *North*, *Par. of Haverhill*, 16 *Pick.*, 282 ; *Tappin* v. *Bruen*, 5 *Mass.*, 193 ; *Call* v. *Hagan*, 8 *Mass.*, 423 ; *Bissell* v. *Biggs*, 9 *Mass.*, 462 ; *N. J. R. R. Co.* v. *M. C. R. R. Co.*, 5 *McClean*, 444 ; *Hall* v. *Williams*, 6 *Pick.*, 241 ; *Clark* v. *N. J. Steam Co.*, 1 *Story C. C.*, 531.) In Nash *v.* Rector, 1 Miles Penn., 78 ; Lanson *v.* Campbell, 2 id., 171, and in Moulin *v.* Insurance Co., 4 Zabr. N. J., 222, it was expressly held, that a foreign corporation cannot be summoned by service on its head or chief officer, who at the time of service may be within the territorial jurisdiction of the state—and that such service is bad at common law as well as under the statutes of these states. *g.* The legislature, therefore, contemplated in § 28, natural persons having migratory functions, and not artificial beings, by the laws of their creation confined to a fixed and permanent abode. It had no power over the artificial person being without the state, and in making the exceptions set forth in § 28, could not have anticipated the presence of this defendant within the territorial jurisdiction of the state (*Harmes* v. *Green, Admr.*, 20 *Mo.*, 318.)

The language of the statute is, "if, when a cause of action accrues against a person, he be out of the state, or has absconded," &c., the statute shall not commence to run "until he comes into the state." Can "a cause of action accrue" to a person here, if it arose without the state? The word "he" indicates the sense in which "person" was intended to be used, for the section says "if he be out of the state, or absconds, or conceals himself," &c. (12 *Wend.* 392, *per* Savage, C. J.) The statute, then, has reference to a natural person, contradistinguished from an artificial body. (*Clark* v. *Bank of Miss.*, 5 *Eng. Ark.*, 516; *Olcot* v. *Tioga R. R.*, 26 *Barb.*, 147.) § 13, Comp. L., 838, says that the word "person" may be extended to bodies politic and corporate. But where a party had made a foreign contract with a foreign corporation, it was certainly not contemplated by the legislature, to be applied to such a corporation. For it cannot be supposed when making exceptions, "when a cause of action accrues, of a person being out of the state, or absconding, or concealing himself," &c., the legislature had in view a corporation incapable of moving from place to place, and its presence within the state they could not anticipate. However, it was certainly intended that where a party entered into a foreign contract with a foreign corporation that he should apply to the forum, where the contract arose, for justice. (*Note* 1, *Ang. & Ames on Cor.*, 473.) Therefore the enactment of the two years statute of limitation. And no argument *ab inconvenienti* or considerations of equity can be resorted to, to give any other construction to the statute than is indicated by the words used. *Ang. on Lim.*, § 485, 6; *McClusky* v. *Cromwell*, 1 *Kern.*, 601, Allen, J., 11-*N. Y.*; *McIver* v. *Ragan*, 2

*Wheat.*, 25; *Demarest* v. *Wynkoop*, 3 *John. Ch.*, 146.

2. But if the exceptions stated in §28 are to be applied, when a foreign corporation is sued in this state on a cause of action accruing without the state, then we claim that such foreign corporation is not bound to negative the exceptions from the general rule that the statute established. It lies upon the plaintiff to aver and prove the fact that creates the exception. For, anything in avoidance of the statute, must be replied to specially, and the *allegata* and *propata* must agree. *Huntington* v. *Brinkerhoff*, 10 *Wend.*, 278; *Vail* v. *Hulton*, 14 *Ind.*, 344; *Chitty on Cont.*, *9th Am. ed.*, 869; *Riser* v. *Snoddy*, 7 *Ind.*, 444; *Jones* v. *Chiles*, 4 *J. J. Marshall*, 621; *Phares* v. *Walters*, 6 *Iowa*, 111; *Wheeler* v. *Webster*, 1 *E. D. Smith*, 1; 5 *U. S. Dig.*, 374, §581; *Moor* v. *Capps*, 4 *Gilm.*, 317; *Judy* v. *Kelly*, 11 *Ill.*, 216; *Walker* v. *Bank of Miss.*, 2 *Eng. Ark.*, 503; §§574, 586, 588, *U. S. Eq. Dig.*, *vol.* 2, 277; *Jones* v. *Hays*, 4 *McLean*, 521; *Bruce* v. *Luck*, 4 *Green* (*Ia.*), 143.

3. The defendant appearing and answering, only waives the question of jurisdiction, so far as it relates to the person; but as the subject matter of the action did not arise within the jurisdiction of the court, no assent or waiver of the parties can make a judgment upon it effectual. (*Harriott* v. *N. J. R. R. Co.*, 2 *Hilton*, 262; *Dudley* v. *Meylan*, 3 *N. Y.*, 12; *Daws* v. *Packard*, 7 *Pet.*, 276; *U. S.* v. *Yale*, 6 *How.*, 605; *Buck* v. *Ashullot & Co.*, 4 *Allen*, 357; *Ind., &c., R. R. Co.* v. *Renner*, 17 *Ind.*, 135.) *a.* Sec. 59, civil code (*p.* 133), only authorizes the bringing of an action against a foreign corporation in a county, when it is made to appear that such corporation has property or debts owing to it in such county, or where such corporation

may be found. (*Buckle* v. *Eckhart*, 3 *N. Y.*, 137.) *b.* Such foreign corporation cannot be held liable in our courts by any proceeding *in personam. Barny* v. *N. Albany and Salem R. R. Co.*, 1 *Handy*, 571; *N. I. R. R. Co.* v. *Mch. C. R. R.*, 5 *McLean*, 444; *Red. on R. R.*, 625–6.

4. It was error for the court to allow the following questions, and answers thereto, against defendant's objection: *a.* "What were your services, in hunting those mules, worth, per day?" The rule of damages would be, not what the witnesses' services were worth, but what such services were fairly worth. (*Sedg. on Dam.*, 630; *Pfeil* v. *Kemper*, 3 *Wis.*, 315.) *b.* "How much did you pay out, in recovering the six mules?" The rule of compensation would be, not the amount actually paid out, but the reasonable or necessary expenditure incurred. *c.* "How many hands would be necessary to drive two hundred and fifty mules, supposing they were broke mules, and driven under the circumstances detailed by the witnesses in this case?" The jury must determine, from the facts proved, the number of hands requisite, and not some witness for them. (*Shepherd* v. *Willis*, 19 *O.*, 142; 23 *Wend.*, 431; 17 *id.*, 161; 24 *id.*, 688; 21 *id.*, 342; *Paige* v. *Hazard*, 5 *Hill*, 603; *Crane* v. *Northfield*, 33 *Vt.*, 124; *Rawls* v. *Am. Life Ins. Co.*, 36 *Barb.*, 357.) *d.* It is not competent for witnesses to state opinions or conclusions from facts, whether such facts are known to them or derived from the testimony of others. *Moorhous* v. *Matthews*, 2 *N. Y.*, 514; *Merrit* v. *Seaman*, 6 *id.*, 168; *Concord R. R.* v. *Greeley*, 3 *Foster* (*N. H.*), 243; *Hartford Ins. Co.* v. *Hamer*, 2 *O. St.*, 452; *Robertson* v. *Stark*, 15 *N. H.*, 109; *Starkie's Ev.*, *Sharswood*, 155;

*Patterson* v. *Colbrook*, 9 *Foster*, 101; *Anthony* v. *Stinson's Adm'r*, 4 *Kas.*

5. The court erred in refusing to charge the jury, as requested by the plaintiff in error. *a.* The first instruction is sustained by the following authorities: Red. on R. R., 253; Ang. Car., 267; Holtsclaw *v.* Duff, 27 Mo., 392; Briggs *v.* Boston and Lowell R. R. Co., 6 Allen, 249; Nutting *v.* Conn. R. R. Co., 1 Gray, 502; Angel *v.* Miss. & Mo. R. R. Co., 18 Iowa, 564; Owrrit *v.* Henshaw, 35 Vt., 605; 10 Barb.; 17 *id.*, 184; Fish *v.* Newton, 1 Denio, 45; 2 Par. on Con., 140–7; Chitty on Con., 497, note 1. *b.* The second by: Angel *v.* Miss. & Mo. R. R. Co., 18 Iowa, 561; Richards *v.* M. S. & N. J. R. R. Co., 20 Ill., 404; Porter v. C. & J. R. R. Co., *id.*, 407; Noys *v.* Rut. & Bur. R. R., 27 Vt., 110; 23 *id.*, 189; Smith *v.* Nashua & Lowell R. R., 7 Foster, 86; Thomas *v.* B. & P. R. R. Co., 10 Metc., 472; 2 Par. on Con., 199; Chitty on Con., 499, note. *c.* The third by: 18 Iowa, *supra;* 1 Denio, 45; Stone *v.* Wait, 31 Me., 409; Hemphill *v.* Chenie, 6 W. & S., 62; Norway Plains Co. *v.* Boston & C. R., 1 Gray, 263; 2 Par. on Con., 186; Toledo & Wabash R. R. Co. *v.* Goddard, 25 Ind., 185; Bransmer *et al.* *v.* Toledo & Wabash R. R. Co., *id.*, 434. *d.* The fourth and fifth by authorities *supra.* *e.* The sixth by: Amer. R. R. Cas., vol. 1, 182–3; Clark *v.* Rochester & Syracuse R. Co., 14 N. Y., 570. *f.* The seventh by authorities cited in first point. *g.* The eighth and ninth by authorities *supra.* *h.* The tenth by: 18 Iowa, 564; 2 Par. on Con., 197. *i.* The eleventh by: Code Civ. Pro., §§ 348, 358–9.

*Pendry & Gambell*, for defendant in error, submitted:

1. It was competent to show by experts the habits

of mules, the difficulty of driving them, and the number of hands necessary to safely drive and secure them, under a given state of facts.    The witnesses all testified that they had considerable experience in taking care of and driving mules.    It was not a matter about which persons not engaged in the business were competent to speak ; nor is it a matter about which all are supposed to have some knowledge.    The rule is, that if the subject matter be of such a character that the witnesses can become experts, then, sufficient knowledge being shown, they are experts, and competent to testify as such.    And, if such was not the character of the subject matter, individuals, who, by their personal observation and experience had acquired a knowledge of the habits of such animals, were competent to testify as to the number of men necessary to drive them, under the circumstances as stated by the witnesses.    *Harpending* v. *Shoemaker*, 37 *Barb.*, 270 ; *Kearney* v. *Farrell*, 28 *Conn.*, 317 ; *Porter* v. *Pequonnoc, &c.*, 17 *Conn.*, 249 ; *Page* v. *Parker*, 40 *N. H.*, 47 ; *Bearss* v. *Coply*, 10 *N. Y.*, 93 ; *Cottrell* v. *Myrick*, 222.

2. *a.* The mules were delivered into the custody of the defendant below as a common carrier, and it was responsible as a carrier for the safe delivery of the property. The company could have restricted its liability by special agreement. (*Edwards on Bailments*, 576 ; *Angell on Carriers*, §§ 214, 215 ; *Palmer* v. *Grand Junction R. R. Co.*, 4 *M. & W.*, 746 ; *Sage* v. *R. R. Co.*, 31 *Maine*, 228 ; *Pierce on Railroads*, 462–3.)    Hence the jury were correctly instructed as to defendant's liability.    *b.* The contract was to carry the mules from St. Louis to Macon (Hudson), the junction of the Hannibal & St. Joseph railroad with the North Missouri railroad, and there deliver the same to the Hannibal

& St. Joseph road for transportation over its line, to the point of destination. The defendant was bound to deliver the mules to the connecting line according to agreement, and its liability would be changed from that of a common carrier to that of a warehouseman, only in the absence of the connecting line, or in case of its refusal or neglect to receive the mules after due notice. (*Edwards on Bailments*, 528–530; *Miller* v. *Steam Nav. Co.*, 13 *Barb.*, 361; *Parsons* v. *Monteith*, 13 *Barb.*, 353; 8 *Cowen*, 223; 6 *Hill*, 157; 23 *Conn.*, 457; *Pierce on Railways*, 455–6.) *c*. The defendant was bound to deliver the mules according to the contract; and it could not terminate its liability as a carrier until such delivery, or until the lapse of a reasonable time after offer of delivery. If, after such offer to deliver, the mules were not taken away within a reasonable time, then the defendant was liable as an ordinary bailee. (*Edw. on Bail.*, 513–521; *Pierce on Railw.*, 435–437; *Redf. on Railw.*, 252–3; 32 *N. H.*, 523; *Railroad* v. *Ward*, 2 *Gibbs, Mich.*, 528; 16 *Ill.*, 502; *Powell* v. *Myers*, 26 *Wend.*, 591; *American Co.* v. *Baldwin*, 26 *Ill.*, 504; *Brintnall* v. *Saratoga R. R.*, 32 *Vt.*, 665; *Angell on Carriers*, § 282, *and notes.*) *d*. It was not necessary that the owner should have gone with the train. (4 *Kernan*, 572.) *e*. The defendant having agreed to deliver the mules to the connecting line, it was sufficient to establish, *prima facie*, a right to recover on the part of the plaintiff, to show that the property was delivered to the defendant at St. Louis, and that it had not arrived at the point of destination, and was lost. *Brintnall* v. *Railroad Co.*, 322, 665; *Day* v. *Ridley*, 16 *Vt.*, 48; *Angell*, §§ 202, 472, *and cases cited.*

3. If the defendant had reduced his liability from

that of a carrier to that of a warehouseman or ordinary bailee, then it was bound to use ordinary care and prudence in respect to the custody of the mules; and whether such care was exercised, was a question of fact for the jury. That there was gross negligence, the testimony clearly established. *Edwards on Bail.*, 43, 44, 103, 105, 371, 373, 374, 527; *McHenry* v. *Railroad Co.*, 4 *Harrington*, 448.

4. In regard to the instruction as to the statute of limitations, numbered 7, the court could not give this instruction. *a*. Because the plaintiff had, both in the petition and reply, alleged that the defendant was a foreign corporation, created and existing under the laws of the State of Missouri, and having no corporate existence under the laws of Kansas. *b*. There was testimony tending to prove, and absolutely proving, these allegations. *c*. The defendant is a "person" within the meaning of section 28 of the code; an artificial being, a corporate body, legally confined to the territory of the State of Missouri. There it resided, and was, at the time the cause of action accrued, and always afterwards, out of the State of Kansas. This court will not presume that the legislature intended to discriminate in favor of a foreign corporation. *Comp. L.*, 838, *clause* 13, *title* "*Person;*" *Olcott* v. *Tioga Railroad Co.*, 20 *N. Y.*, 219; *Thompson* v. *Tioga Railroad Co.*, 36 *Barb.*, 79.

*By the Court*, Kingman, C. J.

In October, 1862, the defendant in error shipped on the road of plaintiff in error, at St. Louis, Mo., a lot of mules, to Macon city, the termination of said road, for further transportation westward. The evidence is

contradictory, whether the plaintiff in error was to deliver the mules at Macon city to the Hannibal & St. Joseph railroad, or not.

When the mules reached Macon city they were put in the stock pens of the road, and on the afternoon of the day of their arrival, as the proofs differ, the mules were taken out to water, and, while out, stampeded, and sixteen of them got away, ten of which were never recovered. Six were recovered by Akers. In April, 1865, Akers brought suit to recover the value of the mules lost, and for money and labor expended in the recovery for the six that were recaptured and recovered a judgment for $1,200. This judgment the road seeks to set aside, and alleges various errors in the proceedings of the court below, which we will notice in their order.

It is claimed that the defendant, being a foreign corporation, having its existence by virtue of the laws of another state, and having its office there, and doing its business there, it cannot be sued here otherwise than by attachment proceedings against the property of said corporation. The service in this case was made upon the president of the road, in Leavenworth. The defendant, in answer to the summons so served, made his appearance and answered to the merits. No question was raised as to the jurisdiction over the person, nor was any such point made in the court below, save as a ground for a motion for a new trial. It is not one of the causes mentioned in the code for which a new trial should be granted, and it is doubtful whether such a question could ever have been raised in that way. We might well leave this point as settled by this suggestion; but, inasmuch as many authorities were cited, and our convictions clear, we may as well

state them here. In doing that, it is not necessary to determine that the service of process on an officer or agent of a foreign corporation, outside the territorial jurisdiction creating it, is binding on such corporation. There seems to be some conflict on this point in the decisions of the various states, arising, perhaps, more from the method of pleading than from any general misapprehension of the law. In the case of McQuin *v.* Middletown Man. Co. (10 *Johns.*, 5), SPENCER, C. J., in delivering the opinion of the court, says: "If the president of a bank of another state were to come within this state, he would not represent the corporation here. His functions and his character would not accompany him when he moved beyond the jurisdiction of the government under whose laws he derived his character." This was a dictum merely, and not necessarily involved in the case before the court; but it has been approved and cited in various cases since. Even this dictum is not applicable to this case. By the comity universally acknowledged in the states, and acted upon by the Supreme Court in the case of Bank of Augusta *v.* Earl (13 *Peters*, 519), corporations may send their officers and agents into other states, transact their business and make contracts there. If corporations avail themselves of this privilege, it is but justice that they be subject to the action of the courts of the state whose comity they thus invoke. They ought, so far as suits are concerned, to be regarded as voluntarily placing themselves in the situation of citizens of that state.

A natural person, who goes into another state, carries along with him all his personal liabilities, and if a corporation chooses to exercise its powers in another state, it ought of necessity to become amenable to its

laws; and so far, it must be admitted that the dictum
in the case of McQuin *v.* Middleton ought to be
modified, and undoubtedly would be when a proper
case was made. It would then appear that there are
cases where a foreign corporation may be sued in a
state other than the one which created it, upon general
principles of law. Our code specially authorizes it.
The thirteenth clause of the act of February 11, 1859,
concerning the construction of statutes, applies as well
to the code as to any other part of the statutes. It was
passed on the same day as the code, and is part of the
legislative will, authoritatively expressed upon the
various matters of which it treats. Applying, then,
the word person to bodies politic and corporate, and
such bodies are as much the subjects of suits as persons,
while section 59 expressly mentions foreign corpora-
tions as liable to suit, by pointing out in what county
they may be sued. Such was evidently the purpose
of the code. In another section the manner of attaching
their property is pointed out. Now, in this case we
need not decide that the president of a foreign corpo-
ration, being accidentally in this state, could be served
with process that would bind the corporation, because
it nowhere appears in the record that such were the
facts. And, further, the corporation appeared and
answered to the claim, and had a trial on the merits.
The court had jurisdiction of the subject matter. It
was a breach of contract, as entirely within their juris-
diction as though it had been a suit on an unpaid note.
Either would be a breach of contract, and that only.
The court thus having jurisdiction over the subject mat-
ter, and the parties appearing and submitting their case
to the decision of the court, cannot now complain that
the jurisdiction of the person was not rightfully ob-

tained.  Says Mr. Justice STORY:  "If a person who is out of the jurisdiction chooses to appear and defend the suit without objection, there is nothing to prevent the courts of the United States from entertaining the suit, if otherwise unobjectionable; for his appearance without process is a waiver of the objection of the non-service of the process within the district." (*See Clark* v. *New Jersey Steam Navigation Company*, 1 *Story's Reps., and cases therein cited.*)  This is not only decided law, but good sense.  A court having jurisdiction of the subject matter would be open to serious charges if it permitted a party to try a cause upon its merits, without in any way raising a question as to the parties being rightfully before it, and then allow such party, upon a decision adverse to him, to call in question the service of the process rightfully upon him.  He is not estopped from setting up such claim.  If he is not rightfully in court, he should first raise that question, before he goes to trial on the merits.

It is further alleged that there was error in admitting testimony.  In the progress of the trial the plaintiff below was asked this question:  "What were your services in hunting those mules worth per day?"  This was a proper question.  It went to support one of the issues on trial, viz:  Compensation for plaintiff's services in and about a business in which he had a direct interest.  The rule of damages is undoubtedly what such services were worth.  If there was anything in the pursuits of the plaintiff that made his time more valuable than the average of men, and the answer showed that he had based his answer upon such unusual estimate, it would be proper to present such facts upon cross-examination.

Another question objected to is this:  "How much

did you pay out in recovering the six mules?" We
can perceive no error in this question. It led directly
to support a proper issue in the case. The rule of
compensation is the necessary, reasonable expenditure;
but you must first ascertain what the actual expendi-
ture was, and then show it to have been necessary and
reasonable, or otherwise.

A third question objected to is this: "How many
hands would be necessary to drive two hundred and
fifty mules, supposing they were broke mules, and
driven under the circumstances detailed by the wit-
nesses in the case?" The witness had already shown
his knowledge of the subject matter of the inquiry.
The jury must be informed in some way as to whether
the number of men employed by the railroad company
to take the mules to water was sufficient to show care
and diligence. Few men, selected as jurymen, would
be qualified, either by observation or experience, to
form an opinion as to how many men would be neces-
sary to drive two hundred and fifty broke mules. To
determine whether there was a want of due care in the
driving of the mules to water, was one of the points
on which the jury were to pass, and without testimony,
unless the question could be asked. I find the books
full of cases on this subject, as to the admission of
opinions, and am totally unable to reconcile them.
"It is every day's experience that witnesses in the
trial of causes on the circuit are called upon to state
their judgment or opinion upon questions of value,
of quantity, of size, of time, or the like, when there
has been no test applied by measurement or other-
wise. And this species of evidence has been found
absolutely necessary to even a tolerable administra-
tion of justice; indeed, to refuse it would, in very

many cases, operate as a complete denial of justice. (37 *Barb.*, 288.) But this exception to the rule that the witness testifies as to the facts and not as to his opinions, is generally limited to the case of experts in matters of art and skill, and is not enlarged so as to admit opinions in ordinary cases, when the jury may be supposed competent to form their judgment from the statement of the facts." (*Sedg. on Meas. of Damages*, 634.

So a mason may be asked how long it would take to dry the walls of a house, so as to render it fit for a habitation. (4 *Barb.*, 615.) So also may experienced gardeners give opinions as to the amount of damages done to plants, trees and shrubs by the smoke, heat and gas proceeding from the defendant's brick kiln. (13 *Metc.*, 288.) Now we think this is one of the exceptions made in the rule as laid down by Mr. SEDGWICK, when the jury may not be supposed competent to form their judgment from the statement of facts. They would not be likely to know whether two men were enough to drive the mules or not. Not one juryman in a hundred would have any knowledge on this subject. And it would seem better to admit the testimony of a witness skilled in that business than impose the task of forming opinions upon the jury without the previous necessary knowledge. In this case we think the testimony was properly admitted.

As further error, it is alleged that the instructions refused were law, and should have been given, and those given were not law. Some of the instructions refused are statements of law not applicable to the case, because they took from the jury the power of determining whether the railroad company were acting as common carriers, or were acting merely in the capacity

of warehousemen, when the loss occurred. This was a fact necessary to be determined before the suitable measure of care and diligence—proper in either state of the case—could be applied, greater responsibilities attaching in the former than in the latter case. This distinction is fairly made in the instructions given by the court. Now, if the contract was to transport the mules to Macon city and deliver them to the Hannibal & St. Joseph railroad there, the liability as carriers did not end unless the mules were delivered or offered to be delivered to the latter road. The plaintiff in error could not change its liabilities, nor diminish the measure of its responsibilities, by any neglect of its own duty. It was the province of the jury to determine what the contract was, and whether the plaintiff in error had failed to keep it. On these points the testimony was conflicting, and all the instructions asked by the plaintiff in error, and not embraced in the instructions of the court, proceed upon the hypothesis that the contract of the North Missouri railroad was only to transport the mules to Macon city ; while the testimony was such as would authorize the jury to find that such was the contract, or that it went further, and was also to ship them on the Hannibal & St. Joseph railroad ; and for not giving the right of determining what was the real contract, to the jury, the most of the instructions were not applicable to the facts, and were rightfully refused.

It is not insisted here that the instructions given were not the law of the case. One of the instructions asked by the plaintiff in error is not embraced in the remarks above made, and will receive a separate consideration. It is as follows : "That the defendant having set up the statute of limitations as a bar to the plaintiff's right

to recover, and the plaintiff having failed to plead or prove an avoidance, the jury must find for the defendant." The reply to the plea of the statute of limitations was that the defendant was a foreign corporation, created and existing under the laws of Missouri, and having no corporate existence under the laws of Kansas. And there was testimony absolutely proving these allegations. So that the assumption of fact in the instruction is hardly sustained by the record. But we have already attempted to show that a corporation is a person under the code and within the meaning of sec. 28—an artificial being, a corporate body, confined to the State of Missouri, where it remained until this suit was brought, for aught that appears from the record, and is subject to the exceptions enumerated in sec. 28 of the code. To hold otherwise would be to say that the legislature intended to discriminate in favor of a foreign corporation, without any just grounds for such a conclusion. We think the principle of this instruction was settled by the court in the case of Bonifant *v.* Doniphan (3 *Kas.*, 35), and against the plaintiff in error.

We therefore find no error in the record, and affirm the decision of the court below.

All the justices concurring.