FREDERICK A. SMITH, Appellant, v. THE PILOT MINING COMPANY AND PETER LONERGAN, Respondents.

St. Louis Court of Appeals, December 22, 1891.

1. **Foreign Corporations:** SITUS AND LEVY OF PROCESS UPON SHARES. The right to levy a writ of attachment or execution upon corporate shares by virtue of our statutes ( R. S. 1889, secs., 540, 4924, 4925 ) is not limited by those statutes to the shares of domestic corporations ; it exists in relation to the shares of a foreign corporation, which transacts its business, keeps its stock books, and exercises all its corporate franchises and functions in this state.

2. **Practice, Trial:** SCOPE OF STATUTE FOR SERVICE BY PUBLICATION. The purchaser of such shares under such a levy instituted an action to compel the foreign corporation to recognize him as the owner of such shares and permit him to exercise his rights within the corporation as such stockholder, and made the corporation and defendant in the writ, which was levied upon said shares, parties defendant to this action. *Held*, that the latter could be properly served by publication, both because these rights could under the circumstances only be exercised in Missouri, and constituted property in this state within the purview of the statute providing for service by publication, and because the *situs* of the shares themselves was in this state by virtue of the statutes authorizing the levy thereon.

3. **Powers of Legislature :** SUBJECTING PROPERTY TO DOMESTIC PROCESS : STOCK OF FOREIGN CORPORATIONS. *Held, arguendo*, that while our legislature has no power to change the *situs* of tangible property situated in a foreign state, so as to subject it to domestic process, it has the power to determine the *situs* of property which is intangible and has a *situs* merely by a fiction of law, such as shares in a foreign corporation conducting its business and located in this state ; also that the legislature has fixed the *situs* of such shares at the place where the books of the corporation, evidencing the ownership of its shares, are kept.

*Appeal from the St. Louis City Circuit Court.*—Hon. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Henry H. Denison,* for appellant.

(1) Equity will compel corporation to transfer stock when it has no market value. *Cushman v. Mfg. Co.,* 53 How. Pr. 60; s. c., 76 N. Y. 365. (2) The courts of this state have jurisdiction to grant the relief asked. For jurisdictional purposes the residence of a corporation is at its chief place of business. *Bristol v. Railroad,* 15 Ill. 436; *Railroad v. Paulk,* 21 Ga. 356; *Bank v. Gibson,* 11 Ga. 455; *Jenkins v. Stage Co.,* 22 Cal. 537; *Thorne v. Railroad,* 26 N. J. L. 121; *Edwards v. Bank,* 1 Fla. 136; *Pennsylvania Co. v. Sloan,* 1 Ill. App. 364; *Young v. Iron Co.,* 85 Tenn. 189; *Ducat v. City of Chicago,* 48 Ill. 172; *Ins. Co. v. French,* 18 How. 404; *Railroad v. Harris,* 12 Wall. 65; *Railroad v. Whitton's Adm'r,* 13 Wall. 284; *Gillespie v. Ins. Co.,* 12 Gray, 201; *Lawrence v. Ballou,* 50 Cal. 258; *Baldwin v. Railroad,* 5 Iowa, 518; *Richardson v. Railroad* 8 Iowa, 260; *Railroad v. Akers,* 4 Kan. 453; *Bank v. Railroad,* 82 Ill. 493; *Wood v. Ins. Co.,* 33 Am. Dec. 399; *McNichol v. U. S. M. R. A.,* 74 Mo. 457; *Farnsworth v. Railroad,* 29 Mo. 75; *Middough v. Railroad,* 51 Mo. 520; *City of St. Louis v. Ferry Co.,* 40 Mo. 580; *Lumber Co. v. Bank,* 60 Am. Rep. 789; *Foster v. Potter,* 37 Mo. 525.

*H. J. Cantwell,* for respondent, Peter Lonergan.

There was no service on defendant Lonergan in present suit, and court acquired no jurisdiction over him by the order of publication, as the present suit is not one embraced within provisions of section 2022, Revised Statutes; also section 599, Revised Statutes.

The *situs* of stock in a corporation for the purpose of determining jurisdiction in attachment is in the state where the corporation is formed. *Plimpton v. Bigelow*, 93 N. Y. 592; *Christmas v. Biddle*, 13 Penn. St. 223; *Childs v. Digby*, 24 Penn. St. 223; *Martin v. Railroad*, 7 Bush, 116; *Winslow v. Fletcher*, 13 Am. & Eng. Corp. Cas. 39. This rule is analogous to the one making the *situs* of a debt, for the purpose of garnishment, the residence of the garnishee or the place where the debt is payable.

ROMBAUER, P. J.—This is a bill in equity, brought by the plaintiff to compel the defendant corporation to place his name on its stock book as the owner of certain shares of stock of said corporation, purchased by him at a sale under execution against the defendant Lonergan, and to issue to him certificates of stock.

The petition states in substance that, while the defendant corporation was chartered by the state of Illinois, it has ever since its organization exercised all its corporate franchises and functions wholly within the state of Missouri; that all its officers and directors reside in the city of St. Louis, and all its business is transacted here; that its stock books, in which transfers of stocks are made, are here and have always been here; that the corporation transacts none of its business in the state of Illinois, has no office, officer or agent there, and cannot be served in that state, and the only place in which it can be served is this state.

The petition further states, in substance, that defendant Lonergan was formerly a resident of the city of St. Louis, and, while such, became a stockholder in the corporation to the extent of nineteen thousand, five hundred shares; that he afterwards removed from the state, and, was at the dates hereinafter stated a non-resident thereof; that one Ahern, to whom he was indebted, brought a suit of attachment against him while he was such non-resident, and the officer into whose hands the writ of

attachment was placed called therewith upon the secretary of the defendant corporation, who under his hand and the seal of the corporation certified to him that said Lonergan did hold shares to the number aforesaid in said corporation, whereupon the officer made a levy upon such shares as provided by statute, and, final judgment having been obtained against Lonergan, said officer sold the shares thus attached at public vendue under execution, at which sale the plaintiff became the purchaser thereof.

The petition also states, in substance, that plaintiff thus becoming the owner of such shares called upon the proper officers of the defendant corporation, and demanded that such shares be transferred to him on the books of the corporation, all of which, as well as said officers, were, and had always been, in the city of St. Louis ; but that such officers refused and declined to make the transfer, assigning as a reason that the plaintiff had no title to said shares, as they never were subject to attachment in the city of St. Louis, which was not their *situs* at the date of the attachment.

The petition then states, in substance, that the said shares have no market value, and the plaintiff has no adequate remedy at law by an action for damages ; that, not being able to have said shares transferred, he cannot exercise his franchises as a shareholder which are of value.    The petition concludes with a prayer for a decree requiring the defendant Lonergan to give up the shares for cancellation, and restraining the defendant corporation from permitting Lonergan to vote said shares, and that the title of said shares be decreed to be in the plaintiff, and requiring the corporation to recognize plaintiff as the true owner of said shares, to pay him the dividends thereon, if any, and to permit him to exercise the rights in such corporation to which the ownership of such shares entitles him, and praying for such other and further relief, etc.

Upon an affidavit showing the non-residence of Lonergan, the court ordered him to be brought in by publication, and, proof of such publication being made and he not appearing, the court entered judgment by default against him on June 12, 1890. Afterwards and at the same term of court Lonergan put in a special appearance by counsel and moved to set aside the default, as he had not been properly served, alleging that this was not one of the cases in which service by publication is authorized. This motion the court sustained at the December term, 1890, when it set aside the default, and dismissed the petition as to Lonergan, the plaintiff excepting and saving his exceptions by bill. The defendant corporation also appeared in June and demurred to the petition on the ground that it failed to show that the shares of Lonergan had ever been legally attached, and on the further ground that the court had no jurisdiction of the subject of the action, which was the settling of the plaintiff's rights as a shareholder in a foreign corporation. The court sustained this demurrer, and, the plaintiff declining to plead further, a final judgment was entered against the plaintiff on the demurrer.

The errors assigned by plaintiff are that the court erred in dismissing the petition against Lonergan, and also erred in sustaining the demurrer of the defendant corporation.

The validity of the first assignment must be determined by the proposition, whether our statute on the subject of constructive service authorizes the bringing in by publication of a non-resident defendant, situated as Lonergan was, under circumstances detailed in the petition. The statute authorizes such service "*in all actions at law or in equity, which have for their immediate object the enforcement or establishment of any lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court.*" It becomes important, therefore, to determine

in the first instance whether the claim sought to be enforced by the plaintiff was against property within the jurisdiction of the court.

The petition seeks, among other things, by way of mandatory injunction to secure to the plaintiff the franchise of exercising his rights as a stockholder in the defendant corporation, which franchise, if the allegations of the petition are true, the plaintiff can exercise only here, and nowhere else, as the petition states that all corporate meetings are held here and nowhere else. That franchise is property. Obtaining such a decree in a jurisdiction, where the corporation exists, if at all, as a mere intangible legal fiction, could be of no possible benefit to the plaintiff, even conceding, what is not made apparent by anything in the case, that service of any kind could be had upon the corporation in such other state. This, of itself, disposes of Lonergan's contention adversely to him, and shows that the court erred in dismissing the writ against him, irrespective of other considerations to be discussed hereafter.

But it will further be seen that in contemplation of our statute the shares in the defendant corporation, which form the subject-matter of the controversy, were likewise here. The shares, for the purposes of jurisdiction *in rem*, must have a *situs* somewhere, and our statute contemplates that their *situs* for that purpose should be where the books of the corporation evidencing their ownership are kept. This appears from the following statutory enactments :

"Shares of stock in any bank, association, joint-stock company or corporation, belonging to any defendant in any writ of attachment, may be attached in the same manner, as the same may be levied upon under execution." R. S. 1889, sec. 540.

"When an execution shall be issued against any person, being the owner of any shares of stock in any bank, insurance company or other corporation, it shall be

the duty of the cashier, secretary or chief clerk of such bank, insurance company or other corporation, upon the request of the officer having such execution, to furnish him with a certificate, under his hand, stating the number of rights or shares the defendant holds in the stock of such bank, company or corporation, with the incumbrance thereon." R. S. 1889, sec. 4924.

"The officer, upon obtaining such information, or in any other manner, may make a levy of such execution on such rights or shares by leaving a true copy of such writ with the cashier, secretary or chief clerk ; and, if there be no such officer, then with some officer of such bank, association, joint-stock company or corporation, with an attested certificate by the officer making the levy that he levies upon and takes such rights and shares to satisfy such execution." R. S. 1889, sec. 4925.

There is nothing in the foregoing sections, which limits the right of attachment or execution to shares of domestic corporations. The word "*any*" is broad enough to include them all. Nor is there anything in other statutes or the decisions in this state which would exclude a literal construction ; on the contrary, the decisions in this state concur in holding that a foreign corporation may become an inhabitant in this state for the purposes of jurisdiction, although its legal residence as an entity is elsewhere. Thus in *Farnsworth v. Railroad*, 29 Mo. 78, Judge NAPTON with his usual clearness thus discusses the proposition : "When the foreign corporation has located here, and has its chief office or place of business here, it seems no longer to be regarded as a foreign corporation. It may be sued as an individual resident here. The president, secretary, etc., are of course here, or such officers as, under our statute, would enable a suit to be brought and service to be had, and there is no necessity for giving the extraordinary process of attachment against it, anymore than against a domestic corporation whose chief

office is here.    Having its chief office here, it ceases to be, for all the purposes of this law, a foreign corporation." And in *City of St. Louis v. Ferry Co.*, 40 Mo. 586, Judge HOLMES, after approvingly quoting this language, adds:   "It was said that a foreign corporation which takes up its residence and establishes a principal office here becomes amenable to the laws and the process of the state like an individual resident, and affords all the facilities for serving the ordinary process of law which any corporation, with a charter derived from the legislature of this state, could do."

Since the statute of 1875 ( R. S. 1889, sec. 2017 ), foreign corporations having an office, or doing business in this state, may be summoned to appear in the same manner as domestic corporations, and it was held in *McNichol v. U. S. Mercantile Reporting Agency*, 74 Mo. 457, that the legislature had power to declare that upon a service thus obtained against a foreign corporation the judgment should have the effect of a general judgment.    The legislation on this subject, and the construction placed upon it by the decisions, all clearly indicate that there is no controlling reason why the word *"any"* in the sections of our attachment and execution laws should be confined to domestic corporations, simply because in the opinion of some text-writers and some courts, the *situs* of corporate stock is in the state creating the corporation.    If the legislature has power to enact that the residence of the corporation for the purposes of jurisdiction should be in this state, it has power to enact that the *situs* of its stock should be here for a similar purpose, and we must hold that by the above statutory provisions it has so enacted.

In New York the statute provides that " the shares which the defendant has in the stock of an association or corporation, together with the interests and profits thereon, may be levied upon," and further provides that the right is to be exercised by leaving a copy of the

attachment with the president, secretary, cashier or managing agent. The supreme court in *Plimpton v. Biglow*, 29 Hun, 362, in a well-reasoned opinion held that this provision applied to shares in foreign corporations. This ruling was reversed on appeal (93 N. Y. 592), mainly on the ground that, as the capital stock of the corporation is in law supposed to have its *situs* at the legal residence of the corporation, it was not to be supposed that the legislature, without a more specific expression of the intent than the statute contained, intended to subject the stock of foreign corporations to attachment. It was conceded, however, by both courts that, if the facts were such that the foreign corporation as an artificial body might be considered to be present in the state where the attachment was had, then the legislature had full power to subject such stock to attachment there. And the correctness of this last proposition seems to be obvious; because, while the legislature has clearly no power to change by law the *situs* of tangible property situated in a foreign state, so as to subject it to domestic process, it clearly has the power, where the property is intangible, and the *situs* is a mere fiction of law, to determine where such *situs* is. This is but the exercise of the unquestioned power to prescribe the conditions on which foreign corporations are permitted to carry on their business in this state, after they locate here for all practical purposes.

The decisions of the very state, where this corporation claims to have its legal residence, hold that such residence is where it exercises its corporate functions and franchises ( *Bank v. Railroad*, 82 Ill. 493; *Pennsylvania Co. v. Sloan*, 1 Ill. App. 371); and the decisions in other jurisdictions to the same effect are numerous. *Railroad v. Harris*, 12 Wall. 65; *Gillespie v. Ins. Co.*, 12 Gray, 201; *Lawrence v. Ballou*, 50 Cal. 258; *Richardson v. Railroad*, 8 Iowa, 260; *Railroad v. Akers*, 4 Kan. 453; *Ins. Co. v. Carrugi*, 41 Ga. 660; *Young v. Iron Co.*, 85 Tenn. 189.

We, therefore, conclude that the court likewise erred in sustaining the demurrer of the defendant corporation. The judgment is reversed, and the cause remanded, to be proceeded with in conformity with this opinion. All the judges concur.