DEAN RAPID TELEGRAPH COMPANY, Respondent, v. D. C. HOWELL, Defendant, ELMER E. FREEMAN and W. A. MARSHALL, doing business under the name of FREEMAN & MARSHALL, Appellants.

Kansas City Court of Appeals, February 5, 1912.

1. CORPORATIONS, PRIVATE: Levies on Stock: Execution. Where the chief office of a foreign corporation is established and maintained in this state, the stock of such corporation is subject to levy and attachment here.

2. ————: Right to Stock. One who becomes the owner of stock by the transfer to him of the certificate cannot hold the stock against a subsequent creditor of his vendor who had no knowledge of the transfer, where the laws of the state where the corporation was organized provide that transfers of stock shall not be valid except, as between the parties thereto, until the same are regularly entered upon the books of the company.

Appeal from Jackson Circuit Court.—*Hon. W. A. Powell,* Judge.

REVERSED AND REMANDED (*with directions*).

*Silvers & Silvers* and *W. F. Guthrie* for appellants.

*S. S. Gundlach* for respondent.

JOHNSON, J.—Plaintiff, a corporation, filed a bill of interpleader in the circuit court of Jackson county, the prime object of which is to obtain an adjudication respecting the ownership of certain shares of the capital stock of the corporation.

The defendants, Howell on one side and Freeman and Marshall on the other, are rival claimants of the stock and prior to the filing of the bill, each had made a formal demand of the secretary of the corporation for the issuance of a certificate. Each defendant appeared and filed an interplea. A trial of the issues resulted in a judgment awarding the stock to Howell and the cause here on the appeal of Freeman and Marshall.

There is no controversy over the material facts of the case. Plaintiff was incorporated in Arizona and in May, 1909, was licensed to do business in this state, under the provisions of section 1025, Rev. Stat. 1899. Its articles of incorporation, filed in Arizona, authorized it to "establish branch offices within or without the territory of Arizona, where meetings of the board of directors may be held," and provided that "the principal branch office without the territory of Arizona, where the business of said corporation is to be transacted (is to be) in Kansas City, Jackson county, Missouri." And further that "thereafter the board of directors shall be elected from among the stockholders on the first Tuesday in September, in

each year, at the annual meeting of the stockholders to be held in Kansas City, Jackson county, Missouri." It is agreed by the parties "that at all times after its organization the principal office of said corporation was and still is in Kansas City in charge of its duly elected and qualified officers, that the books of said company, including the stock certificate, transfer books and ledgers are and at all times have been kept in its offices in Kansas City."

The statutes of Arizona, duly pleaded and put in evidence, provide that transfers of stock in corporations "shall not be valid except as between the parties thereto until the same are regularly entered upon the books of the company so as to show the names of the persons by whom and to whom the transfer is made, the number or other designation of the shares and the date of the transfer," etc. The substance of this statutory requirement was embodied in one of the by-laws of the corporation.

Frank Dail, a resident of Kansas City, owned 15,000 shares of the stock of the company and appeared on the stock transfer book as such owner. Certificates were issued to him one of which was certificate No. 286 for 5,000 shares. He borrowed $100 from Howell, who also is a resident of Kansas City, and placed certificate No. 286 in Howell's hands as security for the debt and after he had defaulted in paying the debt, agreed that Howell should have the full ownership of the certificate and, of course, of the stock it represented. Howell neglected to have the transfer made on the books of the corporation. Afterward Dail became indebted to Freeman and Marshall and they recovered a judgment against him for the debt in a justice court. They had an execution issued and on April 7, 1909, the constable served notice on plaintiff, under the provisions of section 2202, R. S. 1909, of levy of the execution on all the stock owned by Dail. A sale of the stock was made under the execu-

tion and Freeman and Marshall became the purchasers and received a certificate of sale. Then they served a written demand on plaintiff for the issuance to them of a new certificate. The next day Howell served a similar demand and this suit followed.

The first question we shall discuss is whether or not Freeman and Marshall acquired any title to or interest in the stock of Dail represented by certificate numbered 286, by virtue of their purchase at the execution sale. Counsel for Howell argue that since the *situs* of the stock must be regarded in law as being in Arizona, where the corporation was domiciled and the levy of the execution was an attempt to seize the stock, —the *res*,—here in Missouri, it was abortive, for the reason that the *rei sitae* was not here but in Arizona. On the other hand the position of counsel for Freeman and Marshall is that since the stockholder Dail, the respective claimants, and for all practicable purposes, the corporation itself, together with all of its domiciliary possessions, including (most important of all) its stock books, were in Missouri, the *situs* of the stock for the purposes of seizure under attachment or execution, must be regarded as being in Missouri, and, consequently, under the hypothesis that the title to the stock was vested in Dail at the time of the levy, the purchasers at the execution acquired the full legal title to the property and were entitled to have a new certificate issued to them.

At common law, stock in a corporation was not subject to levy and sale under attachment or execution. [Foster v. Potter, 37 Mo. 525; 2 Cook on Stock & Stockholders (5 Ed.), sec. 480.] This was on the theory that a share of stock is in the nature of a chose in action and such intangible property could not be reached by or made subject to a levy. Therefore, we must look to the statutes for any right the execution creditor had in the present instance to impound the stock in controversy.

The statutes relating to the subject are sections 2201 and 2202, R. S. 1909. They establish the right of a creditor of a stockholder to reach stock in a corporation owned by his debtor by levy under execution and provide a method for the enforcement of such right which method was followed in the present case. In the case of Armour Banking Co. v. St. Louis Nat'l Bank, 113 Mo. 12, the Supreme Court considered the question of the right of a creditor of a stockholder in a foreign coporation to impound the stock of the debtor by a levy upon and seizure of the certificate of stock. The right was denied for the reasons that the statutes providing for the levy of an attachment or execution on stock in private corporations relate only to stock in domestic corporations and make no provision for a levy upon certificates of stock, nor in any way alter the common law doctrine that a certificate of stock is not the stock itself, i. e., the interest or right that the stockholder has in the corporate entity, but is only evidence of such interest or right and, consequently, is not subject to physical seizure by attachment or execution. Speaking of the statutes we have quoted the opinion says:

In regard to these provisions we remark in the first place that in our judgment they apply to domestic corporations alone. It is true, they are general enough to embrace corporations of other states and countries, but their details, prescribing the manner of seizing and conveying the shares of stock, point unerringly, not only to corporations organized under the laws of this state, but also to corporations alone whose place of business is within the county and jurisdiction of the officer making the levy and sale." And the court expressly approved the opinion of the Court of Appeals of New York in Plimpton v. Bigelow, 93 N. Y. 593, which, later, we shall discuss at length as it has been regarded as a leading case by the courts of last resort in many jurisdictions and by text writers.

And in the recent case of Richardson v. Busch, 198 Mo. 174, the Supreme Court reaffirmed the doctrine of the Armour case that a certificate of stock in a foreign corporation cannot be the subject of the levy of an attachment or execution in this state. "Our process," says Judge Valliant in the opinion, "cannot reach beyond our state boundaries, and, as suggested in the quotation from the Pennsylvania court, if our General Assembly should pass on act essaying to authorize the levy of an execution on land in another state by seizing the title deeds that happened to be within our borders, the act would be unavailing. If the real thing that is sought to be taken hold of by the process is not in Missouri it is beyond our reach, and for that reason doubtless our Legislature has never attempted to prescribe a mode for levying an attachment (or execution) on stock in a foreign corporation."

The foundation for the rule expressed in these decisions of our Supreme Court that the intangible property right inherent in the stock of a corporation, must have a situs, a place of existence, just as tangible property; that property whether tangible or intangible cannot exist in two places at once; that the common law regards the situs of property in the stock of a corporation as being at the place of the domicile, the home of the corporation; that as a corporation is an alien to all other jurisdictions than that of its domicile so is its stock an alien in such other jurisdictions and that, therefore, stock in a foreign corporation cannot be reached by process issued in this state since our laws and our processes can have no extra-territorial effect.

"We do not doubt," says the court in Plimpton v. Bigelow, supra, "that shares for the purpose of attachment proceedings may be deemed to be in the possession of the corporation which issued them, but only at the place where the corporation, by intendment of

law, always remains, to-wit, in the state or country of its creation. In all other places it is an alien. It may send its agents abroad as any other inhabitant may do, without passing personally into the foreign jurisdiction or changing its legal residence.''

But though it be true, as we have shown, that a corporation organized in a foreign state or country has its domicile in the state that chartered it and cannot be said to have changed its citizenship and removed its entity to this state by the facts that it sends agents into this state to transact a part of its business; that it obtains a license to do business in this state, or even that it maintains a branch office here for the transaction of its business, the weight of modern authority sustains the conclusion that a corporation—an artificial person—may domesticate itself in a state other than that of its nativity in a way to bring itself within the operation of statutes relating only to domestic corporations.

The case of Smith v. The Pilot Mining Company, 47 Mo. App. 409, decided by the St. Louis Court of Appeals, presents features closely resembling those of the case in hand. The corporation in question in that case had been chartered in Illinois but had its chief office in Missouri and did not maintain an office, officer or agent in Illinois. The court, speaking through Rombauer, J., held that the situs of its stock was in Missouri and subject to levy by attachment or execution issued in this state. The conclusion of Judge Rombauer that the language of the statutes disclosed a a legislative purpose to include within its purview stock of foreign as well as of domestic corporations cannot stand in the face of the later decisions of the Supreme Court in the Armour and Richardson cases, but his argument that a foreign corporation may become domesticated, is sound and has not been repudiated by the Supreme Court in any case we have consulted. On the contrary, as pointed out by Judge

Rombauer, the Supreme Court holds that a foreign corporation "which takes up its residence and establishes a principal office here becomes amenable to the laws and the process of the state like an individual resident, and affords all the facilities for serving the ordinary process of law which any corporation, with a charter derived from the Legislature of this state could do." [City v. Ferry Co., 40 Mo. 586; Farnsworth v. Railroad, 29 Mo. 78.]

The cases relied on by respondent, when rightly understood, do not militate against this rule, and if they did we would follow the decisions of our Supreme Court. We shall select two of these cases as fairly typical. Plimpton v. Bigelow, supra, and Caffery v. Choctaw Coal & Mining Co., 95 Mo. App. 174, decided by this court. In neither case had the foreign corporation removed its chief office to the state wherein the attempt was made to impound the stock and, therefore, those cases are decisive of no other point of present concern than that we have discussed, viz., that where the corporation has preserved and occupied its home in the state of its creation the situs of its stock is at its domicile and such stock cannot be reached by process issued in a foreign state. To that doctrine we readily assent but it does not cover the facts of the case in hand where, as in the case of Smith against Mining Company, supra, the corporation has established and maintains its chief office in this state. The Court of Appeals of New York, the author of the decision in the Plimpton case, recognizes the distinction we are making in the case of Simpson v. Jersey City Contracting Company, 165 N. Y. 193, 58 N. E. 896, decided in December, 1900, and clearly rejects the doctrine that a corporation cannot become domesticated in a foreign state to the extent of subjecting itself and its stock to the laws and processes of the state to which in fact, it emigrates.

Without further reference to authorities we announce the conclusion that where the chief office of a corporation is established and maintained in this state, the stock of such corporation is subject to levy and attachment here. By the chief office, we do not mean the office where the business of the corporation with the public is chiefly transacted but the office wherein is transacted what we may call the internal business of the corporation and where its corporate books and records, such as its minute book and stock register are kept. Any other rule would be inadequate to meet the necessities of modern business conditions. It is a fact of common knowledge that the practice of what I shall call voluntary corporate expatriation has become so general and so popular with the promoters of corporations that the rigid enforcement of a doctrine that rests on no more solid foundation than a mere legal fiction would lead to absurd and most unjust consequences. Promoters go to states where the laws most favor their purposes and obtain a charter of incorporation, with no thought of ever conducting any of the business of the corporation in such state, or of ever holding a meeting of the stockholders or directors there, or even of maintaining therein an office or an agent. They provide as they did in the present case for the establishment of the chief office in another state and, as in this case, set up such office in the foreign state and make it the center of the activities of the corporation. With the chief office of the plaintiff in this state in charge of its president and secretary and with all of its household goods here, its minute book, seal and stock register, which are the Lares and Penates of a corporation, it would be a travesty on justice to hold that the situs of its stock is in Arizona.

Finally we turn to the question of whether Howell, who became the owner of the stock by the transfer to him of the certificate, can hold the stock as against a

subsequent creditor of his vendor who had no knowledge of the transfer.

The Supreme Court hold that in the absence of legislative enactment restricting the transfer of stock to any particular mode, the transfer is complete on delivery of the certificate with power to transfer and the payment of the purchase money, not only between vendor and vendee, but against a creditor of the vendor who, without notice of the transfer, attaches or has execution levied upon the stock. [Trust Co. v. Lumber Co., 118 Mo. 447, and cases cited.]

"Every corporation necessarily carries its charter with it wherever it goes, for that is the law of its existence." [State ex inf. v. Tobacco Co., 177 Mo. l. c. 33.] And the laws of Arizona that became a part of the charter powers, rights and duties of the corporation and its stockholders must be recognized here as binding on the stockholders. The laws of Arizona say "transfers of stock shall not be valid except as between the parties thereto until the same are regularly entered upon the books of the company," etc. Where a by-law of the corporation provides for the registration of transfers of stock, the rule is that such by-law, regarded as made only for the convenience and safety of the corporation, cannot be allowed to affect the general rule of law that a transfer of title is complete on the transfer of the stock certificate but where the statute provides that a transfer shall not be valid until recorded on the books of the company, it must be construed as being of general application and as not restricted to serving the purposes of the corporation. Our own views are well expressed in the following excerpt from the opinion of the Supreme Court of Iowa in Ottumwa Screen Co. v. Stodghill, 72 N. W. Rep. 669:

"We think the statute should be construed to mean just what it says. We are not authorized to insert another exception in the statute which, in effect,

we must do if we hold that the attachment lien is not superior to the claims of plaintiffs. Plaintiffs construe the statute as if it read: 'The transfer of shares is not valid· except as between the parties thereto, and except as between the transferee and an attaching creditor of the transferrer who has actual notice of the transfer.' That would be engrafting upon the statute an exception it does not contain.''

We conclude that appellants are the owners of the stock and are entitled to the relief prayed for in their interplea. Accordingly the judgment is reversed and the cause remanded with directions to enter judgment in· accordance with this decision. All concur.